Your Honor, and may it please the Court, Stanley Blackman for Thompson Thrift. This is the second time that this case has been before this Court. The first time this case was here, this Court reversed the District Court's judgment that Thompson had breached the party's contract by refusing to pay D2 more money for so-called excess excavation work. According to this Court, the District Court had misinterpreted the party's contract and misapplied the controlling Texas law, both of which foreclosed D2's claims. Yet on remand, the District Court assessed contractual damages untethered to any breach of contract it had actually found. It imposed statutory prompt payment interest based on a demand that D2 had never made. It awarded the exact same amount of attorney's fees that it awarded before this Court reversed its judgment. And then it added on even more fees because Thompson had appealed. This appeal presents the question whether the District Court was correct to force Thompson to pay D2 for bringing a lawsuit that the party's contract and more than a century of Texas law foreclosed. The answer— I'm going to tell you that my interest is in the attorney's fees issue, the $81,000 or whatever that amount was. I mean, we've already ruled on it. I understand you think it was manifest injustice and so forth, but I want to turn to the attorney's fees. You said, okay, you said that the Court awarded the same attorney's fees for the trial level. Did you challenge the amount as opposed to awarding any fees? Your Honor, no. What we raised below was that D2 could not be the prevailing party under the Texas legal standard. Right. So, I mean, I understand the concept that when a party recovers $10 million and then they're still arguably a prevailing party, but you didn't make that argument. You didn't make the argument that the first time around was $300-something-plus-thousand-dollars and now it's only $80-something-thousand-dollars, and therefore the amount should be less. You only made the argument of—or your group only made the argument no attorney's fees should be awarded. That's right, Your Honor. The argument below was that under Texas law, what must be considered as the main issue in the case, and D2 was not a prevailing party under the Texas legal standard. So it's our position that the District Court should not have gotten to the amount of the reasonableness of fees in any case because it didn't even apply the correct legal standard. In fact, on the issue of attorney's fees, the District Court did not review the record meaningfully to see what was the issue that was being argued, alleged, and litigated throughout the case. Instead, what the District Court said was, oh, well, D2 was entitled to a net recovery. Thompson didn't prevail on any of its claims. Therefore, Thompson cannot be the prevailing party. But that is not the test under Texas law, and it is not consistent with what the Texas Supreme Court has said, which is that a defendant can be the prevailing party for the recovery of attorney's fees if it obtains a take-nothing judgment on the main issue or issues in the case. And that is . . . We know that, in our opinion, I was on the first panel, as you well know, the argument that there was only one breach of contract, but in our panel opinion, we affirmed the judgment for the $81,000 vacated on the $257,000, so that meant they got something. So, pre-admitting for the moment, your argument that, quote, as you say in the brief here, that the panel made an error, close quote, nonetheless, we affirmed the $81,000. So if they got the $81,000, as a list, as part of the unpaid work, they did prevail on something. And so, if they prevailed on the $81,000, certainly they didn't prevail on the $257,000, then why wouldn't they be, quote, a prevailing party? In other words, there's not a take-nothing judgment, is there? I'm not sure I followed the take-nothing argument, because they got $81,000. They got less than all they came here to get, but they got $81,000. So if they got $81,000, I understand your argument, well, that's wrong. They shouldn't have got it. But back to Judge Haines' question, why wasn't your alternative position, well, we don't think they should get anything, but assuming you disagree, and then going after the attorney's fees, it just seemed like it was kind of an all-or-nothing strategy. Yeah, go ahead. Well, Your Honor, I have three responses. Go ahead. First, I would say that I disagree with Your Honor in that by recovering $81,000, that means that they are a prevailing party. I think that's inconsistent with the main issue test, and as we cite in our brief, the purpose of the main issue test is that it recognizes that when a defendant defeats a plaintiff's main claim in an action, that defendant's … It's also inconsistent with take-nothing. Well, Your Honor, I disagree with that, because I think that … If they get $81,000, does that take nothing? On the main issue in the case, I think that it is, because the main issue, as this Court recognized in de Bayon v. Total Minotone Corporation, in assessing what the main issue in a case is, the Court has to look at what was the main issue that was being argued and litigated at trial. And I think it's telling on this point that D2 does not even really dispute what this case was all about. Its own counsel argued at trial that the controversy was all about excess soil, whether D2 over-excavated or whether there was more soil on the property than Thompson told D2 about. Assume for the sake of your being here that, no matter how eloquent and erudite your arguments are about that, that that doesn't end up a winner in terms of what happened on the merits. So without abandoning the position, because you briefed it fully and we got it, but just back to the question Judge Haynes asked you about the attorney's fees, whether or not there was any traversing of the overall amount, reasonableness, hours, apportioning it, you know, and on and on and on, or was it just a, you know, they shouldn't get any? And if that's the case, aren't you stuck? No, Your Honor, because I think that if the Court looks at, I think we start with the premise that the district court didn't apply the proper legal standard. Whether the Court then wants to look into kind of the record at all, I think it's not really disputed that the district court didn't apply the main issue test. So I think that would be a purpose to vacate and remand, as the Court did in DeBayon versus Total Minotone Corporation, because there's no reason, I would say, for this Court to then review the record itself if the Court feels that the Court applied the wrong legal standard. So I don't think that it's a situation where Thompson is stuck, to use the Court's terminology. But I also want to point out that this is not just a breach of contract case. Thompson brought, or D2 brought, claims for Quantum Meroweth based on this same exact issue. I don't think that because of that, it can be said that Thompson didn't receive any take-nothing judgments. This Court reversed and rendered judgment to Thompson in the first opinion on the issue of Quantum Meroweth. It reversed and rendered judgment to Thompson on the issue of whether there was a breach of contract for excess soil excavation. So I do think that this Court did enter take-nothing judgments in Thompson's favor. That's in the plain language. That does turn to me on the appellate attorney's fees. I think that's a different animal from this notion that if you won something at trial but not everything, you get attorney's fees. The notion that on appeal, your opponent was the winner is harder for me to construe. So maybe you want to talk a little bit about that. Why even assuming arguendo we go with the $81,000 and the trial fees, what's your argument about why they shouldn't get attorney's fees for the appeal? Well, Your Honor, I think that the easiest route on that is that they don't even defend them in their briefs. They did not respond to any of Thompson's arguments about why appellate attorney's fees were improper under the substantive law. So I think any ground for affirming those has been forfeited. But as a substantive matter, this Court recognized in ExxonMobil that an appellee is only able to incur fees incurred in defending against an unsuccessful appeal. And in ExxonMobil, this Court recognized that an appeal that results in a vacatur of an unfavorable judgment, it's hard to characterize that as unsuccessful. And Texas courts also have a policy against deterring meritorious appeals. If a party could successfully appeal a judgment and then have attorney's fees assessed against it, that would certainly deter meritorious appeals. So I think that is substantively improper under Texas law. And I think the D2 has forfeited any argument to the contrary. And I direct the Court to its decision in 9503 Midlax where it denied appellate attorney's fees because it had reversed more of the appealed award than it affirmed. So I think that's the answer on appellate attorney's fees. But I actually think 9503 Midlax, and I hope the Court will indulge me on this, is instructive on why this is the same issue for the trial attorney's fees. The Court in that case affirmed that the defendants had breached certain lease agreements, but it reversed on others. And this Court still applied the regular main issue test. It said that the main issue was the issue of whether the defendant was a holdover tenant, and it denied attorney's fees because the defendant had prevailed on the main issue. So I think that that case shows that this circuit has previously applied the main issue test, not as some all or nothing. Well, if you got some money but you didn't get your main breach claim, you can still be the prevailing party. I think 9503 Midlax shows that that is not how the main issue test works, and it's not how the main issue test is supposed to work. I think that that collapses the net recovery rule that the district court applied into the main issue test. And I'd also direct the Court to the Chevron case out of the Houston 14th District Court of Appeals where the Court there found that the party, the defendant, had breached a contract, but it nonetheless said that the defendant was the prevailing party because it raised a defense that prevented the defendant or the plaintiff from recovering more than $4 million in attorneys or in breach of contract damages. And I'd also then direct the Court to Dees v. Dees in which the plaintiff prevailed on a breach of contract claim but was denied attorney's fees and denied prevailing party status because it didn't prevail on the equitable subrogation claim that the Court said was really what the parties had been arguing about throughout the length of the case. And so I think I'd push back a little bit on the Court's questioning to the extent that it suggests as long as you win on some claim, you're the prevailing party because that is not the test as Texas courts have applied it. And so I understand, Judge Haynes, your concern that you were most concerned about the attorney's views the last of my time to address the issue of the breach of contract judgment. And that's because I think that it's largely undisputed in this case that there is no breach of contract that supports the judgment. And I want to be very precise about what I'm saying because I'm aware of my friend on the other side's statements about deception and a lack of candor, and so I want to direct the Court to page 2915 of the Record on Appeal in which the district court very clearly finds how it believed Thompson breached the contract by failing to timely issue a change order to compensate D2 for the extra excavation work. There's no other breach of contract in the district court's order. And Thompson, so the original panel did state that it was affirming $81,000 in damages on the basis of site mismanagement, but I think it's telling that D2 doesn't even mention site mismanagement in its brief on appeal. It has never argued that there were separate breaches. In fact, I direct the Court to the oral argument in the prior case where the first thing my friend on the other side said is this is a breach of contract case with two separate damages awards. Thompson raised that in the initial appeal and said that this is a sole breach with two awards of damages. Your Honor, I don't think that this, we understand. Let me ask you this. Yes, Your Honor. What does this mean in terms of the mandate? Okay. This is the first panel opinion in the decretal language. We affirm the judgment for the $81,068 in unpaid work and the related prompt payment statute and lien remedies for that breach of contract, period, close quote. Then we reverse the judgment for $257,000 on those breach of contract and quantum merit claims. Your Honor. My question in terms of the $81,000, the way it was framed in the original panel opinion did seem to characterize the $81,000 as part of a breach of contract claim. Do you follow what I'm saying? I do, Your Honor. I think there was a petition for a panel re-hearing file on that issue, right? There was, Your Honor. That one was denied. Well, Your Honor, two responses to the question. I'll start with the second. Alpha Omega versus Prudential Insurance Company is a case from this court that holds that the denial of a petition for panel re-hearing without comment has no law of the case effect. So that's, as a legal matter, I don't think that that matters, but I do . . . Well, I guess my question is as to the mandate. I mean, if the mandate embraces that, I know in your briefing you said the panel errored or something characterized that the panel . . . I mean, you got two layers of argument. One that the district court erred, but astutely it says the panel erred in characterizing it or whatever. So, you know . . . Well, Your . . . I'm just asking. Of course, Your Honor. I think what . . . Because of the language for that breach of contract is the way, you know, it's said. Your argument would be, well, the unpaid work wasn't part of the breach of contract, right? Your Honor, I see my time is expiring. You can answer the questions. Yeah, go ahead. Yes, Your Honor. So, I understand that the panel said we affirm the breach of . . . the $81,000 damages award for the unpaid work, but the . . . our argument is that the district court, as this case . . . as this court would have recognized in United States v. Valco Corporation, is the district court is not bound by findings it never made, and that's what Valco stands for, that when an earlier panel opinion says something that wasn't found, then it doesn't bind the district court. And that makes sense, Your Honor. As the Eighth Circuit recognized in United States v. Manfrey Corporation, a district court should correct issues when . . . Well, I guess my question is, and not to belabor it, does that become part of the mandate? So when it went back down to the district court, then if the district court was operating off of the mandate inclusive of it being a breach of contract, well, then the district court seemed to have felt, you know, she was obliged, you know, to follow the mandate. You see what I'm saying? I'm trying to . . . I know you alleged in your briefing, you know, the panel made the error, and I get that, but I'm just not trying to take you down a rabbit trail, but the fact that when it went back to the district court, Chief Strunk says she's following the mandate of the panel. So was she, you know, embracing that, you know, and if so, you know, this panel can't overrule it. Anyway, that's just . . . you can respond to it again if need be when you come back up, but I just put it out there because in preparing for it, it's just a question. Would Your Honor like me to address it on rebuttal? Yeah, you can respond. You can respond to it. I think you get my point. Yes, Your Honor, I'm happy to address that now if you'd like or if you want me to come back up. Well, just wait until you come back up. Okay. Thank you.  All right. Mr. Summers. Good morning, Your Honors. My name is William Summers. I'm with Langley & Benack in San Antonio, and I have the honor to represent D2 Excavating in this case. I understand Judge Haynes' questions, and I understand Judge Stewart's questions so far, so I'm going to cut to the chase because it seems like the big issue in this case is the amount of attorneys' fees. We disagree with counsel as to what the prevailing party rule is in Texas with respect to that. There is a Supreme Court case that came out, I want to say, in April of 2018, 2019, called Romoose. And what that specifically said is if there is a prevailing party clause in a contract, that supersedes Chapter 38 of the Civil Practices and Remedies Code, Chapter 28 of the Property Code, which is the Prompt Payment Act, and also Section 53-156 of the Texas Property Code. All three of those codes I just cited have no application to the prevailing party. We disagree with counsel's comments that the prevailing party rule in Texas is the rule. We cited in our response brief what the standard is under Chapter 38. This was a Chapter 38 case from the start to finish. We never asserted that the Romoose prevailing party clause in a contract was operative in any way, shape, or form. Their reliance, we believe, is misplaced, and Chapter 38 of the Civil Practices and Remedies Code is the one that applies. This is the old rule that we've heard many times before. If you're going to play stickball in Canarsie, don't bring the Bronx rules with you. Now, the reason why I'm saying this is because I want to quote something from one of our earlier pleadings. However, even if defendants, appellants, were correct in embracing the most money rule that is contrary to Texas law, which D-2 denies, D-2 would still be the prevailing party. Under that rule, because not containing the appellate fees and interest sought in the amended final judgment, D-2 already prevailed on the claim of $81,000 that was affirmed by the Fifth Circuit in the prior panel, that the interest calculated on that based upon the prompt payment statute, and the prompt payment statute in Texas says interest is accrued at the rate of one and a half percent per month from the date that it was due. Judge Ramos, in her decision, made specific findings of when that debt was due, calculated the 36-day period that it is interest-free, and then applied the interest rate at one and a half percent per month on that dollar amount. And that was a total of $47,376.30 for the period of May 1st through June 1st of 2019, and then it continued at a daily rate of $39.98 until July 29th of 2019. Trial attorneys fees in the amount of $356,080.91, court costs in the amount of $22,435.13. Now, this is also impacted by part of our burden of proof in this case was to defeat the counterclaim brought by Thompson Thrift Construction against D-2. The total value of that, and there's some errors in the record, not errors in the record, but there are issues in the record in which Thompson Thrift, at the time of trial, tried to bring in more money on top of their pled 167,675.40, which was the amount of their counterclaim at the time of trial. D-2 did prevail upon that at the time of trial. So D-2 prevailed for a total dollar amount at the time of trial of $674,635.74. And under Chapter 38, and I would also argue under 28 of the property code and 53-156 of the property code, that D-2 was the prevailing party. We didn't get everything we wanted, I agree. When we got the original judgment and the mandate from the court, we looked at it, we thought about filing our own motion for rehearing at that point in time. We decided not to. It was something that we thought is, we just can't keep going. Sometime there has to be an end to litigation in order to bring this to conclusion. Well, I appreciate that thought, but I want to ask you, on the last appeal, were you awarded the appellate court costs on that appeal? My recollection is no, we were not. Okay, so how on earth can you get attorney's fees for prevailing if you can't even get the court costs of the appeal? I think because the court in the first appeal said both sides won a little bit, neither side won everything they wanted, so we're going to leave the parties where they are. I'm not, I'm not one... So you're not the prevailing party? On the appeal, we believe we were, Your Honor, because the court sustained... You lost more than you won. Well, that's... So how on earth do you get attorney's fees for that? Your Honor, I understand what you're asking, but all I can tell you is we got an from the trial court for the $81,000, the prompt payment interest, also the court costs in the trial court, and a denial of $167,675.40. Under Texas law... They didn't appeal the attorney's, the trial attorney's fees the first round, except to say, obviously... That's correct. Totally lost. So I understand that, but the concept that when you lose more than you gain on the appeal, you're the winner of the appeal is a little hard for me to fathom. And I appreciate, Your Honor, that's why we disagree with what counsel has referred to as the prevailing party rule. We prevailed on certain issues, and under Chapter 38, it's who wins at the end of the day, even though they don't win everything they ask for. But I don't know that just because you get trial fees, you also get appellate fees. I mean, because had you all stayed in the bucket and no appeal filed, you would have gotten that extra $200-something thousand. Their appeal kept them from having to pay that, so they won on appeal. It's just that you still kept some stuff, so then they should have challenged, or arguably, I think, they should have challenged the amount of the trial fees, not the award of attorney's fees. But I'm still willing to consider every position, so don't think that I'm ruling or anything, and not that my one opinion matters on the ruling anyway. But my point is, I'm just struggling to see how you can possibly claim you won, and that therefore you should get the attorney's fees on appeal, just because ultimately you have some money in the bucket. Because at the start of the appeal on the first panel, they were going for the moon on that one. They thought we should not be entitled to anything. The findings of fact and conclusions of law, the judge found that we had completed 98.6% of the work required under the contract. Now, that panel, in their opinion, got through a little bit of a tortured way to get there, and that was one of the reasons we thought we weren't going to ask for rehearing. But the end result was we won the $81,000. We won the prejudgment interest under the Prompt Payment Act. We won the trial attorney's fees, and we also got... They didn't appeal that part. I'm sorry? They didn't appeal that part. So when we're talking about what was won and what was lost, they won more than you did. But that's not the state standard, Your Honor. By often their argument... Well, I've spent a lot of time in Texas, and I don't know that they would think that the 5th District Court of Appeals would think this was a win on your part. Well, as a matter of fact, Your Honor, the 14th Court of Appeals did, and I appreciate the question you had. I went back and looked at some of the case dealing with the amount of attorney's fees compared to the amount of the actual award. And in the case of BenCon Management and General Contracting, Inc. versus Boyer, Inc., which is the 14th Court of Appeals, it dealt with a situation that was pretty much just like the D2 in Thompson Thrift. It was a suit by a subcontractor to a general contractor. The amount in controversy in that particular case was about $81,000. And surprisingly, at the time of trial, because it was a hard-fought case just like this case, was about $260,000. Now, that seems like a disproportionate amount, which is what I think the Court is thinking about. In that particular case, I know state law is a little bit different than federal law with respect to this, but in that particular case, they never raised the issue of apportionment, which is something that if they wanted to, they should have raised it in the trial court. They did not raise the issue of reasonableness of the rates charged or the time spent, nor did they raise the issue of necessity. And as a result, the 14th Court in that case used that as an example. Aside to that, it's a Westlaw case, Your Honor. Pardon me. 178 Southwest 3rd, 198, 2005, Texas App, Lexus 5633. And in order to attack a Well, they did challenge her awarding appellate attorney's fees when it was remanded. I understand. But then the question this Court is facing I mean, in this case. I'm not talking about this Benton, but in this case. I understand. And the issue is, was it clearly erroneous with her factual determination and application of the law? Now, clearly erroneous Clearly erroneous is not the standard of the law application. Law is de novo. The question once, if we said, yeah, she can award appellate attorney's fees to you, then the amount is that standard, but not the legal question of whether she awards you the fees is a legal question that's de novo. I appreciate what the Court says. All I'm doing is bringing forward this case, the Benton Court case, to show an example of what another trial court faced with the same situation on a clearly hard-fought case all the way through. If this were not clearly hard-fought, we wouldn't be here a second time. This is one of those situations where there has to be an end. Don't y'all like coming to New Orleans? This is, I believe, the 11th time I've been before this Honorable Court. I've been doing this now for 44 years. I'm a Sticks and Bricks lawyer from San Antonio, Texas. So I don't get here very often. I do love New Orleans. I love the fishing in Venice more, though. There you go. So I'm happy to go on unless the Court has any other questions. Unless you have anything more to add to the attorney's fees. I certainly defer to my colleagues on what their questions are, but I don't have any questions on the $81,000 issue. Okay. And I don't see wasting this Court's time anymore with respect to where we are today, because obviously, to me, the whole issue— How much in attorney's fees and in what respect do you agree? Your Honor, I'm— How much in attorney's fees and in which category do you argue you are entitled to? Well, we believe we're entitled to the full amount in the trial court level. We believe we're entitled to the attorney's fees in the appellate court level. And if this Court will go back and look at Judge Ramos's rationale and reasoning, how she got to the figure of the appellate court, you will see her analysis and shaved about $36,000 of fees off. Still awarded, wasn't it, $111,000? It was about $110,000, Your Honor. We had asked for $146,000, something like that. So she gave you most of your fees. Yes, ma'am. Yes, ma'am. So I don't see waste—not wasting, but I don't see taking up any more of this Court's time with respect to the first one because we believe it's just flat wrong. I'm happy to answer any questions the Court may have. Any other questions? All right. Thank you, sir. Mr. Blackman, you have rebuttal. Thank you, Your Honor, and may it please the Court. I want to start with something that my friend on the other side said about every litigation has to come to an end. We agree with that. We have to think about how this litigation began. It began because D2 believed that it was entitled to more money for soil excavation work. It brought this lawsuit for that reason, and it abandoned its work for that reason. And so in the context of whether D2 is a prevailing party, it has to be considered of why this case even exists in the first place. And to that point, we disagree with D2's contention that there's some sort of different standard under the main issue test because this is not a prevailing party contractual clause. In fact, in Rormo's venture, the Texas Supreme Court said, we apply the ordinary meaning of prevailing party. And it said that the ordinary meaning of prevailing party, whether it's in a contract or whether it's under Section 38.001, is the prevailing party is the one who wins on the main issue in the litigation. And so to that point, I'd just like to remind the Court of what D2 has said throughout this It said that the site was not balanced. It had to remove a substantial amount of excess soil. It said that the key issue in this case was the excess soil theory. It said that this lawsuit ensued because Thompson refused to issue a change order. And it said that this controversy was all about the excess soil issue. It cannot be the case under Texas law that a party brings a lawsuit, says this is the key issue. This is why we brought this lawsuit, lose on that issue, and then recover $356,000 in fees for bringing a claim that more than a century of Texas law had foreclosed. As the original panel recognized, this wasn't novel. This was a rule that dated back to an 1899 contract to build a building in San Antonio. So it's not a fair characterization in our view to say that D2 was the prevailing party as Texas law defines it. And I also would like to address something that my friend on the other side said about the appellate attorney's fees, which was that it prevailed because it defeated a counterclaim and it's not a most money test. We've never argued that the main issue test is a most money test at any point. The point of the main issue test is that a court has to look at what the issue was. This panel, or the original panel said Do you think the fact that they lost more money than they gained on the appeal is not beneficial to them? Oh, I agree with that completely, Your Honor. But I'd say that the most compelling for the original panel's opinion is that the panel said that the focus of the appeal and the principal issue on appeal was excess excavation. So I don't understand how D2 could argue that it won on the main issue on the appeal when even the panel said what that issue was and they didn't win on it. But I'd like to go back to the attorney's fees issue to address something that you said earlier, Your Honor, Judge Haynes, about D2 having the $81,000 and being a prevailing party. I'd just like to direct the court to the briefing in which we point out that courts applying the main issue test have said that a litigant who successfully defeats a claim of great potential liability may be the prevailing party even if the other side receives an affirmative recovery. And the reason that that matters, Your Honor, is that any other test would just collapse the net recovery rule into the main issue test. It would allow a party to bring a lawsuit on one theory, to litigate that theory extensively throughout the case and then say, well, we should get everything because we won on some ancillary issue. Numerous courts have said that that is not how the main issue test works. But in any event, I want to point out that the district court didn't even apply that standard. So the court could just as easily and should, if it has questions about that, vacate and remand based on the district court's failure to apply the legal standard. That's what this court did in De Bayon v. Total Minotone Corporation, and that is appropriate. And I want to end very briefly with Judge Stewart's question before I sat down the first time on the issue of the mandate. Your Honor, we understand and we don't dispute that the original panel said we are not saying, our point merely is that the panel affirmed or said there was no clear error in a finding that the district court never made the first time. And in the United States v. Manfrey, the 8th Circuit, considering that same situation, said, well, if we said the district court did something that it didn't do, the district court not only can but should correct that. Your Honors, this case began because D2 disregarded the party's contract and brought a lawsuit that the law foreclosed. We'd ask the court to reverse the district court's judgment, and at a minimum, its award of attorney's fees. Thank you. All right. Thank you, Mr. Blackman, Mr. Summers. Thank you. Appreciate the briefing and the argument and responsiveness to the court's question. This concludes the orally argued cases before this panel. And these cases, along with the non-orally argued cases, will be submitted for decision. Having said that, the panel stand.